UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA S. HARNDEN,

      Plaintiff,

                                                            Case No. 16-cv-13906

v.

                                                           HON. MARK A. GOLDSMITH

STATE OF MICHIGAN DEPARTMENT
OF HUMAN & HEALTH SERVICES, et al.,

      Defendants.

_____/

## OPINION & ORDER
## OVERRULING PLAINTIFF'S OBJECTIONS (Dkt. 19), ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (Dkt. 18) IN PART, AND GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 10)

      This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Anthony P. Patti (Dkt. 18), which recommends granting Defendants' motion to dismiss (Dkt. 10). Plaintiff Pamela Harnden timely filed objections to the R&R (Dkt. 19), to which Defendants filed a response (Dkt. 20). Because oral argument will not aid the decisional process, the objections to the R&R will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

      For the reasons discussed fully below, the Court overrules Harnden's objections, accepts the recommendation contained in the R&R in part, and grants Defendants' motion to dismiss.

### I. BACKGROUND

      The factual and procedural background, along with the standard of decision and legal principles governing motions to dismiss, have been adequately set forth by the magistrate judge and need not be repeated here in full. In brief summary:

> This is one of four lawsuits filed in this Court in pro per by Pamela Sue Harnden, in the past two years, stemming from actions taken by state and local child protective services officials and peace officers, resulting in the questioning and/or temporary removal of the Harndens' natural, adoptive and foster children. Plaintiff alleges that she and her husband ultimately prevailed at the conclusion of various state court proceedings which sought to remove the children from their care and custody. More specifically and pertinent to this motion, she alleges that March 15, 2010 — the date on which the government's second case against them was closed — "concludes the nightmare that we had lived for 17 months."

5/31/2017 R&R at 2-3 (emphasis omitted).

## II. STANDARD OF REVIEW

The Court reviews de novo any portion of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Alspaugh v. McConnell, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have."). Any arguments made for the first time in objections to an R&R are deemed waived. Uduko v. Cozzens, 975 F. Supp. 2d 750, 757 (E.D. Mich. 2013).

## III. DISCUSSION

### A. Doctrine of Sovereign Immunity

In the R&R, the magistrate judge first concluded that the Michigan Department of Health and Human Services enjoys sovereign immunity under the Eleventh Amendment and, as such, any claims asserted against the Department should be dismissed without prejudice because the Court lacks subject matter jurisdiction. R&R at 15. The magistrate judge reached the same

conclusion for any claims against the 13 individual Defendants to the extent that they were sued in their official capacities as government employees. Id. at 16-17.[1]

Harnden objects to these conclusions for several reasons.[2] Harnden first argues that Defendants are not entitled to sovereign immunity under the plain language of the Eleventh Amendment. Pl. Objs. at 2. Specifically, Harnden states that, because she is a citizen of the State of Michigan, the Eleventh Amendment does not bar her suit against a Michigan government agency and its employees in either their official or individual capacities. Id. Citing Ex parte Young, 209 U.S. 123 (1908), Harnden then contends that government employees are not shielded by sovereign immunity "when those employees act outside of their official capacity." Pl. Objs. at 3. According to Harnden, the allegations in the complaint sufficiently demonstrate that the individual Defendants are liable in their individual capacities. Id. Harden also argues that the Court has subject matter jurisdiction under 42 U.S.C. § 1983 because "it has been determined that it is proper to bring charges against any offender, no matter their job description, and in both their official and individual capacities." Id. at 13 (appearing to cite to O'Donnell v. Brown, 335 F. Supp. 2d 787 (W.D. Mich. 2004)). Finally, Harnden argues that the doctrine of sovereign immunity does not bar her daughter S.H.'s claims because the Court "previously ruled that her claims have merit as to immunity" when the Court dismissed those claims without prejudice in a different case. Id. at 2.

---

[1] The individual Defendants include Williams Weston, Joseph Linert, Jennifer Hutkowski, Marnie DeBell, Sarah Meddaugh, Kim Irwin, Chiquita Ford-White, Samantha Pietrykowski, Mandy Dalrymple, Amy Sherrod, Christina Moses, Jennifer Henderson, and Melisa Hazen. Although Harnden does not clearly identify the titles or responsibilities for each of these Defendants, they all appear to be employees of the Michigan Department of Health and Human Services or some other state agency.

[2] Because the arguments raised in Harnden's first, second, and tenth objections all concern the applicability of the doctrine of sovereign immunity, they will be considered together for purposes of this opinion.

Upon de novo review, the Court agrees with the magistrate judge. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253 (2011). The Eleventh Amendment, which specifically bars "any suit in law or equity, commended or prosecuted against one of the United States by Citizens of another State," U.S. Const. amend. XI, confirmed "the structural understanding that States entered the Union with their sovereign immunity intact," Stewart, 563 U.S. at 253. Because sovereign immunity applies to state agencies, as well as state officials sued in their official capacities, Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Kentucky v. Graham, 473 U.S. 159, 166 (1985), the Michigan Department of Health and Human Services and the individual Defendants (to the extent those government officials were sued in their official capacities) are immune from suit under the Eleventh Amendment. See Brent v. Wayne Cnty. Dep't of Human Servs., No. 11-10724, 2014 WL 3956730, at *3 (E.D. Mich. Aug. 13, 2014) ("Federal district courts within the State of Michigan have repeatedly determined that county offices of the Department of Human Services are arms of the state.").[3] The U.S. Supreme Court

---

[3] When a suit is brought against a state official, the "question arises as to whether that suit is a suit against the State itself." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984). In general, state sovereign immunity extends to a state official who is sued for money damages in his or her official capacity. Will, 491 U.S. at 71; Cory v. White, 457 U.S. 85, 89-91 (1982); Edelman v. Jordan, 415 U.S. 651, 663 (1974). This is because such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," and, therefore, they "should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991).

On the other hand, the Eleventh Amendment provides no immunity against officers in their individual and personal capacities. Id.; Hutsell v. Sayre, 5 F.3d 996, 1003 (6th Cir. 1993). Unlike official-capacity suits, which seek "to impose a liability which must be paid from public funds in the state treasury," Edelman, 415 U.S. at 663, relief in individual-capacity suits is sought from the official's personal assets, see, e.g., Graham, 473 U.S. at 166-168; Scheuer v. Rhodes, 416 U.S. 232, 238 (1974); Ford Motor Co., 323 U.S. at 462. Whether or not an official can be sued in his or her individual capacity does not depend on whether the official was acting outside the scope of his or her employment. See Larson v. Domestic & Foreign Commerce

4

has also held that the doctrine of sovereign immunity extends to suits brought against a state by one of its own citizens. Hans v. Louisiana, 134 U.S. 1, 15 (1890). Thus, insofar as Harnden argues that the Eleventh Amendment does not bar her suit because she is a citizen of Michigan, her contention lacks merit.

There are three exceptions to a state's sovereign immunity: (i) when the state has consented to suit; (ii) when Congress has properly abrogated a state's immunity; and (iii) when the exception first set forth in Ex parte Young applies. See S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008). The State of Michigan has not expressly consented to suit in this case, and Congress did not abrogate Michigan's immunity here. Although Harnden cites to Ex parte Young in her objections, that exception is not applicable in this case.

Under the Ex parte Young exception, federal courts may, consistent with the Eleventh Amendment, entertain suits seeking prospective equitable or declaratory relief for violations of federal law against a state officer sued in his or her official capacity. Caspar v. Snyder, 77 F. Supp. 3d 616, 633 (E.D. Mich. 2015) (citing Will, 491 U.S. at 71 n.10); see also Johnson v. Unknown Dellatifa, 357 F.3d 539, 545 n.1 (6th Cir. 2004) (plaintiff can avoid the "sovereign immunity bar by suing for injunctive or declaratory relief, rather than monetary relief"). Harnden is not seeking any prospective equitable or declaratory relief. See generally Compl. (Dkt. 1-1). Rather, she is seeking only monetary relief in the amount of $100,000,000. Id. at 126. Therefore, the Ex parte Young exception is not applicable in this case.

Harden's reliance on O'Donnell v. Brown, 335 F. Supp. 2d 787 (W.D. Mich. 2004), fares no better. Although the court denied summary judgment for the Ingham County Child Protective Services caseworkers on the individual-capacity claims in that case, it agreed with those

---

Corp., 337 U.S. 682, 714 (1948); Harrington v. Grayson, 764 F. Supp. 464, 468 (E.D. Mich. 1991).

defendants that any claims against them in their official capacities under § 1983 would be barred by the Eleventh Amendment. Id. at 829; see also id. at 815 (dismissing official-capacity claims against City of Lansing police officers).

Finally, although Harnden is correct that this Court previously dismissed her daughter S.H.'s claims without prejudice, in part, because those claims were subject to Michigan's infancy saving provision, see Harnden v. Croswell-Lexington Cmty. Schs., No. 15-cv-12738, 2016 WL 2731188, at *4-6 (E.D. Mich. May 11, 2016), the Court expressed no opinion as to whether those claims had merit in general, or whether the defendants in that case were similarly immune under the Eleventh Amendment in particular. Moreover, Harnden, as an individual plaintiff, cannot represent the interests of others. See Warth v. Seldon, 422 U.S. 490, 499 (1975) ("[T]he plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). S.H. is not a party to this action and a ruling on her claims at this juncture would amount to an advisory opinion, which the Court cannot provide. See Fialka-Feldman v. Oakland Univ. Bd. of Trustees, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions, not just some advisory opinions, and not just advisory opinions that hold little interest to the parties or the public.").[4]

Therefore, the Court concludes that the Eleventh Amendment bars suit against the Michigan Department of Health and Human Services and the individual Defendants in their official capacities. Because no exception to sovereign immunity applies in this case, the Court lacks subject matter jurisdiction over these claims. See Russell v. Lundergan-Grimes, 784 F.3d

---

[4] Even if S.H. were a party to this matter, Harnden still could not represent her. See Thompson v. Mohammed, No. 13-CV-12388, 2013 WL 4747537, at *1 (E.D. Mich. Sept. 4, 2013) ("The law is well settled that a parent may not represent the interests of a minor child pro se because a minor's personal cause of action is her own. . . . While Federal Rule of Civil Procedure 17(c) allows the guardian of an incompetent person to sue on the incompetent's behalf, the rule does not allow the guardian to appear pro se.").

1037, 1046 (6th Cir. 2015) (holding sovereign immunity, guaranteed under the Eleventh Amendment, "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity"). Harnden's objections on this issue lack merit and are overruled.

Although the individual Defendants are entitled to sovereign immunity under the Eleventh Amendment in their official capacities, they are not entitled to sovereign immunity for the claims asserted against them in their personal capacities. Nonetheless, those claims will be dismissed for the reasons discussed below.

### B. No Private Right of Action for "Kidnapping" Under Any Federal Statute

In the R&R, the magistrate judge concluded that there is no private cause of action for kidnapping under federal statutory law. See R&R at 1, 10, 23. Harnden's reliance on 18 U.S.C. § 3299, which states that, "[n]otwithstanding any other law, an indictment may be found or an information instituted at any time without limitation for any offense under section 1201 involving a minor victim," did not alter the magistrate judge's conclusion because that "statute relates to the time frame for filing a criminal indictment or information; it has nothing to do with civil actions." R&R at 23 (emphasis in original).

Harnden objects to these conclusions and maintains that there is a private right of action for kidnapping under federal statutory law.[5] Harnden recognizes that the Federal Kidnapping Act, 18 U.S.C. § 1201, defines the act of kidnapping and "does not contain language in regards to the civil action." Pl. Objs. at 15. However, Harnden argues that § 3299, which she states "falls under the umbrella of § 1201," does "contain [a] civil action for kidnapping." Id.

---

[5] Because the arguments raised in Harnden's fourth, ninth, twelfth, thirteenth, and fourteenth objections all concern Harnden's purported kidnapping claim, they will be considered together for purposes of this opinion.

According to Harnden, the language of § 3299 "expresses two different options for kidnapping" — an "indictment" (civil) "or" an "information" (criminal). See id. at 5 (emphasis omitted). Harnden contends that "indictment" should be interpreted in accordance with a definition she found on Google as "a thing that serves to illustrate that a system or situation is bad and deserves to be condemned." Id. at 5, 14. Based on this definition, Harnden states that an indictment is civil, not criminal, because "[i]t does not make sense to utilize the word 'or' if both subjects in the same sentence were the same (criminal)." Id. at 5; see also id. at 14 (stating that her "previous case did not contain the theory under § 3299 and the obvious civil action allowed as evidenced by the definition of indictment and the conjoining word 'or'").

Upon de novo review, the Court agrees with the magistrate judge; there is no private right of action for kidnapping under any federal statutory law. See Harnden, 2016 WL 2731188, at *2 (collecting cases). Overlooking the fact that Harnden never claimed that she herself was kidnapped, as opposed to her children (who are not parties to this action), Harnden's new "theory" that a private right of action is found in § 3299 lacks merit.

Harnden fails to appreciate the legal difference between an indictment and an information. On the one hand, an indictment is a "formal written accusation of a crime, made by a grand jury and presented to a court for prosecution against the accused person." Black's Law Dictionary 842 (9th ed. 2009); see also Rothgery v. Gillespie Cnty., Tex., 554 U.S. 191, 221 (2008) (Thomas, J., dissenting) ("Blackstone defined an 'indictment' as 'a written accusation of one or more persons of a crime or misdemeanor, preferred to, and presented upon oath by, a grand jury.'"); United States v. Fawcett, 115 F.2d 764, 767 (3d Cir. 1940) (same); cf. U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval

8

forces, or in the Militia, when in actual service in time of War or public danger. . . ." (emphasis added)).⁶ On the other hand, an information is a "formal criminal charge made by a prosecutor without a grand-jury indictment." Black's Law Dictionary 849 (9th ed. 2009). Because an indictment and an information are two distinct methods of initiating a criminal proceeding, see Rothgery, 554 U.S. at 198 ("[T]he initiation of adversary judicial criminal proceedings . . . [commence] by way of formal charge, preliminary hearing, indictment, information, or arraignment."), Congress's use of the conjunction "or" was entirely appropriate when drafting § 3299 and does not suggest the creation of a civil cause of action for kidnapping.

Furthermore, Harnden does not provide any evidence that Congress meant anything other than the traditionally understood legal definition of indictment when it drafted § 3299 of the federal criminal code, or that a different definition of indictment, such as one Harnden found on Google, should control in this case. Nor does Harnden argue that, in addition to a private right, § 3299 also creates a private remedy. See Alexander v. Sandoval, 532 U.S. 275, 286-287 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals."). Therefore, Harnden's objections lack merit and are overruled.

---

⁶ The Merriam-Webster Dictionary also defines "indictment" as a "formal written statement framed by a prosecuting authority and found by a jury (such as a grand jury) charging a person with an offense." Indictment Definition, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/indictment (last visited July 21, 2017).

**C. Time-Barred Claims**

In the R&R, the magistrate judge concluded that Harnden's remaining claims are barred by the applicable statute of limitations. R&R at 19-20. In analyzing Harnden's federal claims brought under 42 U.S.C. § 1983, the magistrate judge properly borrowed Michigan's three-year limitations period for personal-injury claims. Id. at 20. The magistrate judge also applied the three-year limitations period for any purported state-law claims for gross negligence. Id. at 24-25. The magistrate judge then found that Harnden's complaint described Defendants' actions as occurring from October 2008 through March 2010 (at the latest), and that Harnden knew or had reason to know of the alleged acts and the resulting injuries at that time. Id. at 20, 25. Because the complaint was filed on November 3, 2016 — over three years after the statute of limitations had run — the magistrate judge concluded that Harnden's claims were time-barred. Id. The magistrate judge also noted that a criminal investigation initiated by Harnden neither delayed nor tolled the limitations period. Id. at 20-22.

Harnden does not object to the length of the statute-of-limitations period for either her § 1983 claims or the gross-negligence claims. She also concedes that she knew or had reason to know of the alleged bad actions of Defendants and the resulting injuries during the timeframe identified in the R&R. Pl. Objs. at 13. Nevertheless, Harnden objects to the magistrate judge's conclusions, arguing that she could not initiate her civil action until the conclusion of the criminal investigation, which "came to an end November 12, 2014." Id. at 14; see also id. at 4 (claiming that she was informed "by all attorneys" that "a civil case cannot be filed during a

criminal case as it would not only interfere with the investigation it would also compromise the civil rights of all parties involved").[7]

Upon de novo review, the Court agrees with the magistrate judge that Harnden's remaining claims are barred by the statute of limitations, and that any criminal investigation did not toll that time period. The question of when a federal civil rights claim accrues is one of federal law. Harnden, 2016 WL 2731188, at *4. "In general, a civil rights claim for relief accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action," the latter of which the plaintiff "should have discovered . . . through the exercise of reasonable diligence." Id. (quoting Bowden v. City of Franklin, Ky., 12 F. App'x 266, 273 (6th Cir. 2001)). As noted above, Harnden acknowledges that she was aware of the actions giving rise to the present action, which ceased on March 15, 2010. As such, Harden had until March 15, 2013 to file her lawsuit. She did not. Instead, she waited until November 3, 2016 — over three years after the statute of limitations had run.

For Harnden's claims to still be timely, the limitations period must have been tolled. Tolling principles are governed by state law. Id. (citing Bowden, 12 F. App'x at 272-273). "[T]he Michigan Court of Appeals has held that a pending criminal matter does not toll the time to file a civil action." Id. (citing Attorney Gen. v. Harkins, 669 N.W.2d 296, 302 (Mich. Ct. App. 2003); Runions v. Auto-Owners Ins. Co., 495 N.W.2d 166, 168 (Mich. Ct. App. 1992)). Harden has not provided any Michigan authority reaching the opposite conclusion.[8] Therefore, Harnden's objections lack merit and are overruled.

---

[7] Because the arguments raised in Harnden's third and eleventh objections all concern the statute of limitations and any tolling or delay regarding a criminal investigation, they will be considered together for purposes of this opinion.
[8] Harnden cites non-binding authority for the proposition that a court has the discretion to stay civil proceedings pending criminal proceedings. As the magistrate judge correctly pointed out in

11

**D. Case Reassignment**

At the outset of the R&R, the magistrate judge noted that, in addition to the present action, Harnden's two other pending cases — Nos. 16-cv-13904 and 16-cv-13905, both of which were filed on the same day as the present case — were also reassigned to him and the undersigned. R&R at 2 n.1.

In her objections, Harnden argues that reassignment of this case to the undersigned violated Local Rule 83.11(b)(2)-(3), because the parties were not offered an opportunity to respond and no hearing was held prior to reassignment. Pl. Objs. at 6. The Court construes Harnden's objection as a motion for reconsideration of the reassignment order. See Dietrich v. Patti, 2016 WL 3682957, at *3 (E.D. Mich. July 12, 2016) (construing the plaintiff's "objection" to the reassignment of the case as a motion for reconsideration).

Pursuant to Local Rule 7.1(h), a motion for reconsideration must be filed within fourteen days after the entry of the judgment or order. E.D. Mich. LR 7.1(h)(1). A party seeking reconsideration must demonstrate (i) a "palpable defect" by which the court and the parties have been "misled," and (ii) that "correcting the defect will result in a different disposition of the case." Id. A "palpable defect" is an error that is "obvious, clear, unmistakable, manifest or plain." United States v. Cican, 156 F. Supp. 2d 661, 668 (E.D. Mich. 2001).

This case was reassigned from Judge Nancy Edmunds to the undersigned on March 3, 2017, because the case "appeared to be a companion case" to Harnden's first action, No. 15-cv-

---

the R&R, however, the concept of a stay "is inapplicable here, as there was no pending civil suit for which she could have sought a stay during the pendency of the criminal investigation." R&R at 22 n.7; see also id. at 9 n.4 ("[T]he line of cases to which Plaintiff cites do not stand for the proposition that plaintiffs are barred from filing civil cases during the pendency of a criminal action, and merely address the court's ability to stay such a case once it has been filed. The cases to which she cites, therefore, have no bearing on the instant matter." (emphasis in original)).

12738. 3/27/2017 Order (Dkt. 16). Because Harden's objection was filed beyond the fourteen days required under the Local Rule, it is untimely. Nevertheless, even if the Court were to consider the merits of the objection, Harnden has not demonstrated a palpable defect by which the Court was misled, nor has she shown that correcting any defect would have resulted in a different outcome.

Local Rule 83.11(b) provides eight different situations in which a civil case may be reassigned, including the existence of "companion cases," which are defined as "cases in which it appears that: (i) substantially similar evidence will be offered at trial, or (ii) the same or related parties are present and the cases arise out of the same transaction or occurrence . . . ." E.D. Mich. LR 83.11(b)(7)(A)(i)-(ii). Because all of her lawsuits stem from actions taken by state and local child protective services officials and peace officers, which allegedly resulted in the questioning and/or temporary removal of the Harndens' natural, adoptive, and foster children, the cases clearly arise out of the same transaction or occurrence, and substantially similar evidence will be offered at trial. Therefore, Harnden's cases qualify as companion cases under the Local Rule.[9]

Local Rule 83.11(b) further provides that, "[w]hen it becomes apparent to the Judge to whom a case is assigned and to a Judge having an earlier case number that two cases are companion cases, upon consent of the Judge having the earlier case number, the Judge shall sign an order reassigning the case to the Judge having the earlier case number." E.D. Mich. LR 83.11(b)(7)(D). In this case, it became apparent to both Judge Edmunds and the undersigned that this case is a companion to Harden's earlier case. The undersigned thereafter consented to

---

[9] The fact that Harnden's previous case has been terminated does not alter this fact. See E.D. Mich. LR 83.11(b)(7)(B) ("Cases may be companion cases even though one of them has been terminated.").

reassignment. Notably, the Local Rule does not require either an opportunity to respond or a hearing before companion cases are reassigned.

Therefore, Harnden's objection to the reassignment of the instant case to the undersigned is overruled, and any perceived request to have the case reassigned back to Judge Edmunds is denied.

### E. Factual Disagreements

In her sixth, seventh, and eighth objections, Harnden challenges several of the magistrate judge's factual assertions.[10] However, Harnden never explains how correcting any of these facts would alter the magistrate judge's legal conclusions in the R&R or result in a different outcome. As such, these objections lack merit and are overruled.

### F. Enjoining Harnden from Future Filing Without Leave or Pre-Filing Screening

In the R&R, the magistrate judge recommended that this Court consider enjoining Harnden from filing any further lawsuits without leave of the Court or pre-filing screening because the "allegations and arguments made herein make clear that Plaintiff has not assimilated, or worse yet has ignored, this Court's prior rulings on the dispositive issues addressed herein." R&R at 25-26; see also id. at 2 n.1 (same).

In her fifteenth objection, Harnden takes issue with this recommendation, which she considers as "attacking [her] character." Pl. Objs. at 16. Harnden acknowledges that she made "many mistakes . . . in the previous case," but states that she has "not ignored the Court's

---

[10] For example, the magistrate judge noted that the complaint made a passing reference to the kidnapping of "Bobby," which he believed to be a reference to Harnden's husband Robert, and then stated that Harnden could not pursue claims on behalf of other people. See R&R at 5 n.3. In her objections, Harnden states that "Bobby" refers to her son, not her husband, and suggests that the magistrate judge may be "plant[ing] evidence that could possibly taint future jurists' opinions." Pl. Objs. at 8. Although she contends that her "son was kidnapped from [her]," Harnden states that she is "not representing anyone other than [herself] in this Complaint." Id. at 9.

14

previous rulings" and she has "learned (and [she is] still learning) from them . . . ." Id. at 17. Harnden also argues that enjoining her would "violate [her] rights as a citizen of this Country." Id. at 16. Defendants have not taken any position regarding this issue. See Defs. Resp. at 7.

The Court possesses the inherent authority to enjoin vexatious litigants from filing future pleadings without first obtaining court approval to do so. See Feathers v. Chevron U.S.A., Inc., 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."); Filipas v. Lemons, 835 F.2d 1145, 1146 (6th Cir. 1987) (entering an order requiring leave of court before the plaintiffs filed any further complaints was "the proper method for handling the complaints of prolific litigators"); see also Wrenn v. Vanderbilt Univ. Hosp., 50 F.3d 11 at *3 (6th Cir. 1995) (table) ("This court has the authority to enjoin harassing litigation under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a)."); Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1524 (9th Cir. 1983) ("The general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims."). Nevertheless, upon de novo review, the Court believes that such a drastic remedy is not needed at this time. The Court is confident that a warning should suffice. Should Harnden continue to file frivolous complaints concerning the same claims that have been raised and litigated or could have been raised and litigated in prior proceedings, however, the Court will reconsider imposing a pre-filing review requirement, as well as any other sanctions that may be appropriate.

## IV. CONCLUSION

For the reasons stated above, Harnden's objections (Dkt. 19) are overruled, the recommendation contained in the R&R (Dkt. 18) is accepted in part, and Defendants' motion to

dismiss (Dkt. 10) is granted.  Any claims against the Michigan Department of Health and Human Services and the individual Defendants in their official capacities are dismissed without prejudice.  All remaining claims are dismissed with prejudice.

SO ORDERED.

Dated: July 31, 2017　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 31, 2017.

　　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　　Case Manager